**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ | : | |
| **KIMBERLY SHEFCYK,** *et al.,* | : | **CIVIL ACTION** |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **NO.  21-3413** |
| | : | |
| **TEMPLE UNIVERSITY HOSPITAL, INC.,** *et al.,* | : | |
| | : | |
| *Defendants.* | : | |
| _____ | : | |

<u>**MEMORANDUM OPINION**</u>

**Goldberg, J.**                                                                                          **March 2, 2023**

Plaintiff Kimberly Shefcyk alleges that Defendant Dr. Henry Su and other employees of Defendant Temple University Hospital ("Temple") acted negligently during the February 18, 2018 birth of Plaintiff's child, resulting in the baby's severe, permanent brain defects.  Plaintiff sued Dr. Su and Temple in state court, setting forth claims of negligence, negligence through vicarious liability, and corporate negligence.  The parties stipulated that Dr. Su was an employee of the U.S. Public Health Service acting within the scope of his employment at the time of the relevant events.  The parties also agreed that the United States should be substituted as the sole federal defendant in place of Dr. Su.

The United States now contends that Plaintiff's direct claim against the United States should be dismissed as time barred pursuant to the Federal Tort Claims Act ("FTCA").  Plaintiff responds that the statute of limitations should be equitably tolled due to her inability to discover Dr. Su's federal employee status.  For the following reasons, I will grant the Motion and dismiss Plaintiff's claims against the United States of America.

I.      FACTS IN THE AMENDED COMPLAINT

The following facts are set forth in the Amended Complaint.[1]

On February 18, 2018, Plaintiff presented to Temple University Hospital while approximately forty weeks pregnant.  An anatomy ultrasound, performed at seventeen weeks and five days, noted no abnormalities with the pregnancy.  Shortly after arriving to the hospital at approximately 6:29 p.m., Plaintiff was moved to labor and delivery.  (Compl. ¶¶ 13–15.)

While Plaintiff was in labor and delivery, resident Hema Datwani, MD noted that Plaintiff was "at bedside" due to variable decelerations.  The labor and delivery team was aware of her admission, but the attending physician, Dr. Su, was not present.  Plaintiff contends that due to the decelerations and the baby's condition, an emergent c-section should have been performed, but nothing was done. (Id. ¶¶ 16–18.)

At 6:58 p.m., Nurse Hemingway noted "Pt admitted to room 11 alert and oriented fetal heart rat[e] with variable decelerations iv started with labs sent pt turned to left side with o2 at 10 liters via mask dr su in to review strip."  Nurse Hemingway also noted that Dr. Ligorie was to assess Plaintiff for an epidural.  Still at this time, no action was taken to perform a c-section.  (Id. ¶¶ 19–21.)

At 7:38 p.m. and 7:47 p.m., notations by Dr. Rachel Pantoja in Plaintiff's medical chart revealed further complications and "repetitive variable decelerations," but no emergent action was taken.  Finally, after an approximate one hour delay, a determination was made to perform the c-section.  Dr. Su, the attending physician examined Plaintiff and ordered a "stat c-section" at 7:55 p.m. (Id. ¶¶ 23–26.)

---

[1]     In deciding a motion under Federal Rule of Civil Procedure 12, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Plaintiff's child, K.F., was delivered at 8:13 p.m.  Plaintiff contends that, due to the grave loss of oxygen and injuries sustained by the delayed c-section, K.F. suffered from traumatic brain injury and was transferred to St. Christopher's Hospital, where he was an inpatient for three months.  K.F.'s treatment is ongoing and his injuries are permanent.  (Id. ¶¶ 28–30.)

On April 26, 2021, Plaintiff filed suit in state court against Defendant Temple and Defendant Dr. Su, alleging negligence, vicarious liability, and corporate negligence.  On July 30, 2021, the case was removed to federal court.  The parties subsequently stipulated that the United States should be substituted in place of Dr. Su, and that the case should be stayed while Plaintiff exhausted administrative remedies with the appropriate federal agency.  On September 20, 2021, I stayed the matter.

On June 1, 2022, following litigation of an administrative action, Plaintiff filed an Amended Complaint.  Temple filed an Answer and Cross-claim against the United States, and the United States moved to dismiss Plaintiff's claims against it for lack of subject-matter jurisdiction due to their untimely filing.

## II.    LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim or a case. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." Id. at 302 n.3 (quotation omitted).

There are two types of Rule 12(b)(1) motions.  A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue, causing the case to fall outside the court's jurisdiction. Mortensen, 549 F.2d at 891.  In such a case, "no presumptive truthfulness attaches to

3

plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue. Id. With a factual attack, the Court is free to consider evidence outside the pleadings and weigh that evidence. Petruska, 462 F.3d at 302 n.3; see also Gould Elecs., Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Petruska, 462 F.3d at 302 n.3 (quoting Mortenson, 549 F.2d at 891).

## III.    DISCUSSION

The United States argues that Plaintiff's claim is untimely under the Federal Tort Claims Act's two-year statute of limitations.  Plaintiff responds that equitable tolling should apply.

The Federal Tort Claims Act ("FTCA") mandates that an action "shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency. . . ."  28 U.S.C. § 2675(a).  The United States Supreme Court has expressly instructed that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."  McNeil v. United States, 508 U.S. 106, 113 (1993).  This administrative exhaustion "must be complete *before* a party may institute a civil action in District Court under the FTCA."  Wadhwa v. Nicholson, 367 F. App'x 322, 325 (3d Cir. 2010) (emphasis in original).

Because the requirement of presentation is among the terms defining the United States' consent to be sued, it is jurisdictional and cannot be waived. White-Squire v. U.S. Postal Serv., 592 F.3d 453, 457 (3d Cir. 2010) (citation omitted).  Thus, "[f]ailing to follow this procedure deprives federal courts of subject matter jurisdiction."  Abulkhair v. Bush, 413 F. App'x 502, 506 (3d Cir. 2011).  Such requirements are "strictly construed" and a failure to exhaust administrative remedies prior to filing an FTCA claim requires dismissal under Rule 12(b)(1).  Id.

The FTCA also contains a statute of limitations, which provides that, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency

4

within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Thus, "the FTCA imposes a twofold obligation of timeliness upon litigants." Davenport v. U.S., No. 14-742, 2014 WL 10044912, at *5 (M.D. Pa. Oct. 2, 2014). There is a two-year period in which a claim must be tendered to the affected federal agency for its consideration. Id. (citing Wadhwa, 367 F. App'x at 325). Once the agency has acted upon the administrative claim, the plaintiff then has six months in which to proceed to court. Id. Both limitations periods under § 2401(b) must be satisfied in order for an FTCA complaint to be timely. Id.

Here, Plaintiff's negligence claim against the United States accrued at the latest by late February 2018, when Plaintiff's child was born and diagnosed with a traumatic brain injury. See Miller v. Philadelphia Geriatric Ctr., 463 F.3d 266, 271 (3d Cir. 2006) (FTCA claims involving medical malpractice accrue when a plaintiff knows of both the existence and cause of his injury); Calle v. York Hosp., 232 F. Supp. 2d 353, 357 (M.D. Pa. 2002) (same under Pennsylvania law). Accordingly, under the limitations period set forth above, Plaintiff had two years—i.e. until February 2020—in which to file her administrative tort claims.

On April 26, 2021, Plaintiff filed suit, not with the "appropriate Federal agency," but rather in state court. 28 U.S.C. § 2401(b). The United States, claiming that Dr. Su was their employee, then removed the matter to federal court on July 30, 2021. By way of Stipulation and Order, the parties agreed to substitute the United States in place of Dr. Su, dismiss Dr. Su from the action, and stay the action to allow Plaintiff time to file an administrative claim with the appropriate federal agency. On September 9, 2021—almost nineteen months after the expiration of the statute of limitations—Plaintiff filed an administrative tort claim pursuant to the Federal Tort Claims Act. That claim was denied on April 4, 2022. Subsequently, Plaintiff filed an Amended Complaint on June 1, 2022, naming the United States as a Defendant based on Dr. Su's alleged negligence. Given that the FTCA statute of limitations had expired in February 2020, Plaintiff's current claim appears untimely.

That determination, however, does not end the inquiry as the FTCA's statute of limitations may be subject to equitable tolling.  United States v. Kwai Fun Wong, 575 U.S. 402, 412 (2015) ("[E]quitable tolling is available in suits against the Government."); see Hedges v. United States, 404 F.3d 744, 748 (3d Cir. 2005) (federal courts apply equitable tolling to wide range of cases against the Government, including FTCA claims.").  Equitable tolling requests are judged by exacting standards and mere excusable neglect is insufficient.  Id. at 751.  "'[A] plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim.'"  Santos, 559 F.3d at 197 (citing Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1990)).

In FTCA actions, "[i]t is especially appropriate to be restrictive with respect to extension of equitable tolling in cases involving the waiver of the sovereign immunity of the United States." Santos, 559 F.3d at 197–98; see also Jones v. United States, 366 F. App'x 436, 439 (3d Cir. 2010).  Consequently, "[e]quitable tolling may apply to FTCA claims in three instances: '(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.'"  Id. at 439–40 (quoting Hedges, 404 F.3d at 751).

The United States Court of Appeals for the Third Circuit addressed a claim of equitable tolling in a factually analogous case.  In Santos v. United States, 559 F.3d 189 (3d Cir. 2009), the plaintiff filed a medical malpractice action against a hospital and four health care providers in state court and under state law.  Id. at 191.  Prior to filing the complaint, plaintiff's counsel performed a public records search on the hospital (which was a private corporation), corresponded with the hospital, obtained the plaintiff's medical records, visited the site, and reviewed pertinent records onsite.  Id.  In addition, the attorney retained various experts—including a family practice expert, a dental expert, a professor of pediatric otolaryngology, and a board-certified spinal surgeon—all of whom prepared expert reports.

6

Id.  Plaintiff's counsel's investigations, however, did not reveal that the allegedly negligent healthcare workers and their employer (the hospital) all had been deemed employees of the United States pursuant to the Public Health Service Act.  Id. at 191–92.  By the time the plaintiff had filed her suit—which was within the state statute of limitations—the federal statute of limitations for exhausting administrative remedies under the FTCA had elapsed.  Id. at 192.  The District Court noted that it was not clear whether the plaintiff knew or should have known that the hospital received federal funds, but nevertheless found that the plaintiff "failed to exercise due diligence by attempting to ascertain the federal status of her health care providers."  Id. at 200.

In reversing the District Court, the United States Court of Appeals for the Third Circuit held that equitable tolling was appropriate.  Id. at 197–98.  The Court remarked that the plaintiff's "compliance with state law and preparation of her case . . . evidence her general diligence and thus are significant, even though her diligence in itself could not overcome her failure to identify [the hospital] and its personnel as federal employees."  Id. at 198.  The Court further found the plaintiff's belief that the hospital and its employees were subject to Pennsylvania law to be "far from a baseless assumption" as the hospital "apparently looked like a private clinic, and except for FTCA purposes the clinic and its employees were private actors, rather than federal employees."  Id. at 200.  The Court also noted that the plaintiff "based her implicit conclusion that [the hospital] and its employees could be liable under state law on inquiries, reviews of records, and other contacts with York Health."  Id. at 200–01. Rejecting the Government's argument that the plaintiff could have ascertained the hospital's federal status from its website, the Court stated that although the website "indicated that [the hospital] received partial federal financial support from the Government[,] . . . [it] would not reveal to a reasonably diligent plaintiff that its doctors and clinics had been deemed federal employees under the Public Health Service Act, 42 U.S.C. § 233(g)–(n)."  Id. at 201.  Ultimately, the Third Circuit rejected any argument that the plaintiff should have directly inquired of the hospital whether it was a deemed federal employee.  Id. at 202.

I reached a similar outcome in Young v. Temple, Nos. 19-cv-1174, 19-cv-1714, 2019 WL 5569510 (E.D. Pa. Oct. 28, 2019).  Plaintiffs in Young sued a doctor and Temple University Hospital for medical negligence relating to the birth of their child.  I found that "Plaintiffs had set forth sufficient facts showing that they diligently investigated their claim prior to filing suit and were prevented 'in some extraordinary way' from discovering that the [defendant doctor] was a federal employee."  Id. at *9.  Plaintiffs submitted affidavits and evidence reflecting that: (a) Plaintiffs' counsel ordered  medical records from Temple University Hospital and had them reviewed by expert physicians; (b) Plaintiffs never treated at the doctor's federally-funded health care clinic; (c) public information from Temple University Hospital's website at the time of the lawsuit showed that the defendant doctor was a staff physician; (d) Plaintiffs' counsel's search of Philadelphia Court dockets revealed that the doctor had been sued multiple times in her capacity as a physician at Temple Hospital; (e) No defendant disclosed that the defendant doctor was a federal employee; and (f) the doctor's employee contract was not publicly available.  Id. at *9–10.

Plaintiff now claims that, like both and Santos and Young, equitable tolling is warranted.  She argues that:

> Plaintiff undertook a diligent investigation prior to filing her state court action and at the time, there was no information a reasonably diligent plaintiff could have discovered that would have indicated that Dr. Su was acting in his capacity as a federal employee as the attending physician at a private hospital.  As in the Young case, no information in Temple University Hospital's medical records or prenatal records from Temple OB-GYN indicated that Dr. Su was a federal employee (or that any federal employee was involved in providing medical care).  Further, like in Young, Plaintiff's counsel reviewed Temple University Hospital's website to find Dr. Su's biographical page which did not mention he was a federal employee, let alone serving patients at Temple University Hospital as a federal employee.
>
> Like the Young case, Plaintiff's counsel also searched the docket for the Philadelphia County Court of Common Pleas prior to filing suit and there was no indication from review of the docket that Dr. Su was a federal employee.  For example, none of the malpractice cases listed on the docket were ever removed to federal court.  In fact, the most recent docket entry at the time was a malpractice matter

8

against Dr. Su and Temple University Hospital, which again, was not removed to federal court.

Further, while legitimate questions remain as to whether Dr. Su was acting as a federal employee during the subject event, any type of employment contract which would establish that Dr. Su would be acting as a federal employee while providing medical care at Temple University Hospital is not accessible to the public.  In fact, Plaintiff needed to sign off on a confidentiality stipulation to receive such paperwork—which should be provided to Plaintiff soon.  And like the plaintiff in Young, Plaintiff never received care from the subject attending physician (Dr. Su) until her delivery, the hospital and the facility where she was receiving prenatal care are private institutions that do not receive federal funding, and Dr. Su, Dr. Su's purported employer, and Temple University Hospital never disclosed that he was serving Plaintiff in the capacity as a federal employee.

(Pl.'s Resp. Opp'n Mot. to Dismiss 4–5.)

Despite the similarity between the underlying facts at issue here and those in both Santos and Young, I find that Plaintiff's argument does not establish an entitlement to equitable tolling.

*First*, in both Santos and Young, Plaintiffs' brief in support of equitable tolling referred to and attached multiple pieces of evidence to support their arguments.  By contrast here, Plaintiff makes only arguments in a brief with no accompanying exhibits or affidavits to support the allegation that a thorough investigation was conducted.  Such unsworn and unsubstantiated arguments do not constitute evidence.

*Second*, in Young, the plaintiff provided a snapshot of Temple University Hospital's website at the time of the relevant events, which indicated that the defendant doctor was part of Temple University Hospital's "Medical Team" and a "Temple Department of Obstetrics, Gynecology & Reproductive Sciences physician."  By contrast here, Plaintiff's brief simply argues that counsel reviewed Temple University Hospital's current website and found that Dr. Su's biographical page "did not mention he was a federal employee."[2] Aside from the fact that such a statement does not constitute

---

[2]      Unfortunately, the Wayback Machine—an online tool that allows review of past web page versions—does not have Dr. Su's biographical page as it existed at the relevant time.  Nonetheless,

evidence, the absence of an explicit statement that Dr. Su was a federal employee should not have ended the inquiry. My review of Temple University Hospital's current website reveals that Dr. Su is <u>not</u> listed as a "Temple Physician," but rather is designated as a "Private Practice Physician."[3] A further review of his webpage indicates that his office is at the Parkview Health Center in Philadelphia, Pennsylvania. A quick inquiry into the webpage for Parkview Health Center reveals that it has "Federal Public Health Service deemed status."[4]

*Third*, in <u>Young</u>, the plaintiffs referenced and attached four different state court dockets wherein the defendant doctor had been sued in his capacity as a Temple University physician, which misled the plaintiffs into believing that the doctor was not a federal employee. By contrast here, Plaintiff cursorily cites the single medical malpractice case of <u>Henry, et al. v. Temple University, et al</u>, with a case ID number of 160400497 in the Philadelphia Court of Common Pleas and contends that Dr. Su is listed as a defendant with no indication that the matter was removed to federal court. A review of that docket, however, reveals that (a) the case was filed on April 6, 2016, (b) although Dr. Su was named as a defendant, he was never served, (c) no counsel ever entered their appearance on Dr. Su's behalf; and (d) on June 2, 2016, the plaintiff filed a praecipe to discontinue the matter. Accordingly, this case would not be an adequate basis on which Plaintiff's counsel could rest his belief that Dr. Su was not a federal doctor. Indeed, a search of other tort cases involving Dr. Su reveals only one other such matter—<u>Carter v. United States</u>, Civil Action No. 11- 6669. In <u>Carter</u>, the plaintiff, who alleged medical malpractice by Dr. Su while delivering her baby at Parkview Health Center,

---

counsel does not provide any declaration or other sworn statement that any review of Dr. Su's biographical page at the time of filing this Complaint revealed different information.

[3]     See  https://www.templehealth.org/doctors?field_doctor_search_text_value= Su+&field_doctor_conditions_target_id=All&field_doctor_specialties_target_id=All&field_doctor_l ocations_target_id=All&field_doctor_gender_value=All&field_doctor_languages_target_id=All&ho spital_affiliation=All (last visited 3/2/23).

[4]     See <u>https://dvch.org/about-us/</u> (last visited 3/2/23).

actually sued the United States under the Federal Tort Claims Act, noting in the complaint that the United States employed Dr. Su.

*Finally*, unlike the plaintiffs in <u>Santos</u> or <u>Young</u>, there is no indication that Plaintiff acted with the diligence required to invoke equitable tolling. Assuming that Plaintiff justifiably believed that Dr. Su was a Temple employee, Plaintiff would have had two years, under Pennsylvania law, to commence a malpractice action. 42 Pa. Cons. Stat. § 5524(7). Yet, Plaintiff did not bring any action against any of the Defendants until more than three years after the alleged malpractice occurred, making it untimely at the outset. Following removal to federal court, the parties stipulated to a stay of the case while Plaintiff attempted to exhaust administrative remedies. During the pendency of that more than six-month stay—during which Plaintiff was aware of the United States' argument that any action against it would be time barred—Plaintiff failed to gather any evidence or prepare any sworn document regarding the purportedly "diligent investigation" taken prior to filing suit.

"[A] statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." <u>United States v. Midgley</u>, 142 F.3d 174, 179 (3d Cir. 1998). "The law is clear that courts must be sparing in their use of equitable tolling." <u>Seitzinger v. Reading Hosp. & Med. Ctr.</u>, 165 F.3d 236, 239 (3d Cir. 1998). Absent a showing that Plaintiff exercised due diligence in pursuing and preserving her claim and that she was prevented in some extraordinary way has been prevented from asserting her rights, I do not find that equitable tolling is warranted here.

An appropriate Order follows.